**In re Donald Blease SMITH, Debtor.**

**Bankruptcy No. 88–33862.**

United States Bankruptcy Court,
D. South Carolina.

June 27, 1989.

---

Richard J. Dolce, West Columbia, S.C., for debtor.

William H. Short, Jr., Columbia, S.C., for creditor First Federal Sav. and Loan Ass'n of South Carolina.

## ORDER

WILLIAM THURMAN BISHOP,
Bankruptcy Judge.

Before the court is the debtor's objection to the claim of First Federal Savings and Loan Association ("First Federal") and the objection of First Federal to the debtor's amended Chapter 13 plan. The debtor objects to the claim to the extent that First Federal claims interest on the mortgage arrearage owed to it by the debtor prior to confirmation of his Chapter 13 plan. The debtor also objects to attorney's fees claimed by First Federal as a result of its mortgage foreclosure action against him as being excessive and unwarranted. At the

hearing held April 3, 1989, the parties announced that a compromise had been reached on the attorney's fees and costs issues and that First Federal would file an amended proof of claim to resolve this objection. The parties still disagree as to whether or not the debtor is obligated to pay interest on the mortgage arrearage.

### FINDINGS OF FACT

The debtor executed a note dated July 19, 1985 to First Federal. The note set forth the terms of a loan for $18,057.42 with a repayment period of 120 months. The note is secured by a real estate mortgage.

On the mortgage dated July 18, 1985 [1], the debtor acknowledged his indebtedness to First Federal "... in the principal sum of Eighteen Thousand Fifty–Seven and 42/100 ($18,57.42) (sic) Dollars, which indebtedness is evidenced by borrower's note dated July 18, 1985 ...". The debtor lists the value of the property as $37,500.00 in his schedules. As the value of the property exceeds the amount of the mortgage indebtedness, First Federal is an oversecured creditor. This mortgage granted First Federal a security interest in real property that is the debtor's principal residence and is the only security interest which First Federal holds in that property.

On December 2, 1988, the debtor filed a Chapter 13 petition for relief in the United States Bankruptcy Court for the District of South Carolina. At the time of filing this petition, First Federal had declared the loan in default and had instituted mortgage foreclosure proceedings in state court.

The debtor's amended Chapter 13 plan provided for direct payment to First Federal of regular monthly mortgage payments of $261.91 outside of the plan, and payment to First Federal of $110.00 per month for "arrearage, costs, and fees" on the mortgage on debtor's property. The amended plan, however, did not provide for interest to be paid on the mortgage arrearage, costs, and fees.

### ISSUE

Is First Federal entitled to receive interest on the residential mortgage arrearage owed by the debtor?

### CONCLUSIONS OF LAW

First Federal argues that it is entitled to receive interest on its arrearage claim based on 11 U.S.C. §§ 1325(a)(5) which states that:

... the Court shall confirm a plan if with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; ..."

In addition, First Federal argues that it is entitled to interest on arrearage as an oversecured creditor pursuant to § 506(b), which states:

To the extent that an allowed secured claim is secured by property the value of which, after recover under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

A debtor can pay a secured creditor the present value of its claim under the plan by including interest payments on the claim within the plan. First Federal argues that as an over secured creditor it is entitled to either have its arrearage claim paid in full or receive interest through the plan on all arrearage owed to it under the terms of the note and mortgage, so that it will receive the present value of its claim for the arrearage. First Federal cites 5 *Collier on Bankruptcy*, Para. 1322.09[4] (15th ed. 1989), citing 11 U.S.C. § 1325(a)(5) in sup-

---

1. The date of the mortgage appears to precede the date of the note.

port of its argument. The debtor argues that § 1322(a)(5)(B) is not controlling, and that the court should consider § 1322(b)(2) which states:

"... the plan may modify the rights of holders of secured claims, other than a claim secured only by security interest in real property that is the debtor's principal residence, ..."

Furthermore, § 1322(b)(5) provides:

notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

The debtor contends that since First Federal's security interest is on his principal residence, he can be compelled to pay interest on the arrearage only if the instrument granting the security interest provides for such payments. The debtor argues that to compel him to pay interest on arrearage, if such interest is not specifically provided for in the security instrument, would be a modification of First Federal's rights, which is specifically prohibited pursuant to § 1322(b)(2).

Section 506(b), when read in conjunction with § 1322(a)(5), conflicts with §§ 1322(b)(2), (5). This court must determine which sections control. There is a split of authority on this issue. [*See In re Catlin*, 81 B.R. 522 (Bankr.D.Minn.1987) at 526 for cases holding that interest is not permitted and cases holding that interest is permitted on mortgage arrearage in this situation].

In analyzing *In re Colgrove*, 771 F.2d 119 (1985), which held that it was appropriate to charge interest on arrearage regardless of pre-petition contractual language, one commentator explains:

... neither the present value test of section 1325(a)(5) nor the best interests of creditors test of section 1325(a)(4) is applicable where a default is cured pursuant to section 1322(b)(5). The present value tests compensate creditors whose rights have been modified by reductions

in payments, interest charges or the total amount due; where the default is cured, however, the creditor's rights are not modified. Since the contract terms remain in force (except for the injunction against foreclosure) the time value of money is irrelevant. The creditor receives the interest, charges, and costs to which it is entitled under the contract and applicable nonbankruptcy law. Typically, the creditor is not entitled under its contract to receive interest of previously accrued interest (compound interest) or on attorney's fees and costs, as would result under the *Colgrove* Court's decision.

5 *Collier on Bankruptcy,* ¶ 1322.09[4] (15th ed. 1989).

This court concludes that it is necessary to look to the note and mortgage to determine whether or not the debtor is obligated to pay First Federal interest on his mortgage arrearage. The debtor contends that the only amounts, other than the principal balance of the mortgage, which First Federal may claim interest on are those amounts specifically identified in paragraph 7 of the mortgage, which states:

If Borrower fails to perform the covenants and agreements contained in this Mortgage, ... then Lender at Lender's option, upon notice to Borrower, may made such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees.... Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall ... bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note....

Therefore, paragraph 7 limits the amounts to costs and fees incurred and disbursed by First Federal in its mortgage foreclosure action against the debtor. The debtor is obligated to pay First Federal

interest on any amounts which First Federal actually incurred and disbursed as a part of its mortgage foreclosure action against the debtor. The debtor is not obligated to pay interest to First Federal on any late charges, past due principal, or interest charged against him between the time which he made his last pre-petition payment and the date of his confirmed plan.

This court concludes that this issue is controlled by § 1322(b) and unless specifically provided for in the contract between the parties, First Federal does not have a right to receive interest on the debtor's mortgage arrearage. *See In re Stamper,* 84 B.R. 519 (Bankr.N.D.Ill.1988); *In re Carr,* 32 B.R. 343 (Bankr.N.D.Ga.1983); *In re Christian,* 35 B.R. 229 (Bankr.N.D.Ga. 1983); *In re Simpkins,* 16 B.R. 956 (Bankr. E.D.Tenn.1982).

Therefore, it is ORDERED, ADJUDGED, AND DECREED, that First Federal does not have the right to receive interest on any late charges, past due principal, or interest charged against the debtor between the time which he made his last pre-petition payment and the date his Chapter 13 plan is confirmed.